**FEDERAL ELECTION COMMISSION, Petitioner,**

v.

**CITIZENS FOR FREEMAN, Respondent.**

**Civ. A. No. HAR 84–4496.**

United States District Court, D. Maryland.

Feb. 19, 1985.
As Amended March 14, 1985.

Charles N. Steele, Gen. Counsel, Richard B. Bader, Asst. Gen. Counsel, Anne A. Weissenborn, Washington, D.C., for petitioner.

Patrick J. Moran, Rockville, Md., James F. Schoener, Washington, D.C., Mayer Morganroth, Southfield, Mich., for respondent.

## MEMORANDUM–OPINION AND ORDER

HARGROVE, District Judge.

This order is the result of a hearing and oral argument which took place on Friday, January 18, 1985, concerning a Petition by the Federal Election Commission for an Order to Show Cause why a subpoena and order for written answers to various questions and compelling the production of documents issued pursuant to 2 U.S.C. § 437d(a)(3) (1974) to the Citizens for Freeman Campaign Committee should not be enforced. This Court hereby orders that the subpoena be enforced.

A July 1, 1983, letter of complaint filed pursuant to 2 U.S.C. § 437g(a)(1) (1972) by United States Representative Barbara A. Mikulski notified the Federal Election Commission (FEC) of possible irregularities in the financial management of the Citizens for Freeman (CFF) election campaign. On July 12, 1983, the FEC notified CFF of the complaint pursuant to 2 U.S.C. § 437g(a)(2) (1972), enclosing a copy. The complaint alleged violation of 2 U.S.C. §§ 432 and 434 (1972) based on personal observations of Ms. Mikulski and several newspaper articles written by an investigative reporter.

On October 27, 1983, the FEC reviewed the allegations in the complaint and determined, by an affirmative vote of 6–0, that probable cause to investigate 3 violations existed. The first alleged violation was unlawful in-kind contributions of solicitation costs from representatives of *Fusion* magazine, the Fusion Energy Foundation, Inc., and *The Executive Intelligence Review* magazine, Campaigner Publications, Inc. 2 U.S.C. § 441b (1976). The second was failure to report contributions from individuals who did not intend to make contributions to CFF and failure to report in-kind contributions of staff services from the National Anti-Drug Coalition. 2 U.S.C. § 434(b)(2) (1972). Finally, monies expended by the aforementioned individuals were allegedly expended for purposes other than contributing to CFF. 2 U.S.C. § 434(b)(3) (1972).

On November 1, 1983, CFF was notified of the FEC determination of probable cause to investigate. CFF was given 10 days pursuant to 2 U.S.C. § 437d(a)(1) (1974) to submit materials relevant to this determination and, assured by the FEC, according to 2 U.S.C. § 437g(a)(4)(B) and (12)(A) (1972), that the investigation would remain confidential unless the CFF notified the FEC in writing that the investigation need not remain confidential. Also, the FEC Office of the General Counsel authorized FEC to advise CFF that production of this information could result in settlement through conciliation, pursuant to 2 U.S.C. § 437d(a)(10) (1974), and obviate the need for an investigation to determine probable cause to bring charges. If CFF did not comply, the FEC would initiate an investigation and proceedings to acquire necessary information. 2 U.S.C. § 437d(a)(3) (1974).

The FEC initiated an administrative investigation on November 29, 1983. The issuance of a subpoena to CFF to produce documents and other materials and to answer written interrogatories was authorized on December 2, 1983, in accordance with 2 U.S.C. § 437d(a)(3) (1974). The subpoena was forwarded to CFF on January 5, 1984, requiring a response in 10 days.

On January 20, 1984, CFF requested an extension to February 13, 1984, to answer the written interrogatories. CFF responded, in part, on February 14, and indicated by their response that they would be willing to supply the remaining information upon receipt of justification of the scope of the request from FEC. The sole ground for CFF"s refusal was that the interrogatories and requests for documents, as propounded, were overly broad and not relevant to the investigative purpose. Because of the relatively cooperative tenor of CFF"s response, the FEC chose to address the objection on April 24, 1984.

Having received *no* response from CFF by September 18, 1984, the FEC, again by a 6–0 affirmative vote, authorized the initiation of a Show Cause Petition against CFF to enforce the subpoena of January 5, 1984.

A show cause date was set by the court for January 4, 1985. On December 20, 1984, an order to amend the show cause date to January 18, 1985 was entered and the hearing was held.

## II

■ At oral argument, Respondent (CFF) contended that there was insufficient cause for enforcement of the subpoena on two grounds. The first was that the FEC had taken too long to require compliance in violation of 2 U.S.C. §§ 431 *et seq.* Although there are a few specific time limits established in various sections of the Federal Election Campaign Act (Act), none have been violated by the FEC. An examination of the facts on the record set out above shows that any significant delay is attributable to CFF's actions and not to any malice on the part of the FEC. A perusal of the statutory sections reveals that there is no relevant six month time limit as contended by CFF. Throughout the Act, the FEC is required to move "expeditiously" and to "encourage voluntary compliance." 2 U.S.C. § 437d(a)(10) (1974). It has been amply demonstrated on the record and at oral argument that the FEC did everything it could to allow CFF to comply by granting extensions, clarifying issues, and delaying the issuance of authorized orders and still act expeditiously. CFF's refusal to respond or to answer at all is what created the most significant delays. Contrary to CFF's claims at oral argument, this does not constitute a "fishing expedition." The FEC's inquiries are well within the scope of their authority and are the equivalent to discovery in civil matters.

■ The second ground presented by CFF for insufficient cause was that the subpoena was overly broad and thus violated CFF's First Amendment rights. Overbreadth in the *investigative* stage is difficult to prove given the wide scope of the language of 2 U.S.C. § 437g(a)(2) (1972). The FEC is investigating a possible violation. This is a matter of considerably broader scope than the investigation of spe-

cific facts pertaining to specific charges, which would create specific parameters. All that is required is that (1) the inquiry was proper; (2) the information sought is "reasonably relevant" to the matter involved; and, (3) that the information requested be within the "broad scope" of investigations which is granted in 2 U.S.C. § 437g(a)(2) (1972), once there has been a finding of reason to believe a violation has occurred. *Federal Election Commission v. Citizens for La Rouche,* Misc. Action No. 80–0203 (D.D.C., September 30, 1980); *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950).

The inquiry here was proper. It was initiated pursuant to 2 U.S.C. § 437g(a)(1) and (2) (1972). 2 U.S.C. § 437g(a)(1) (1972) states, "Any person who believes a violation of this Act ... has occurred may file a complaint with the Commission ... in writing, ... signed and sworn to by the person filing the complaint, and [it] shall be notarized." Representative Mikulski filed a complaint which met these requirements in full on July 1, 1983. 2 U.S.C. § 437g(a)(2) (1972) reads, "The Commission, upon receiving a complaint under paragraph (1), and if it has reason to believe that any person has committed a violation of this Act ... shall notify the person involved of such alleged violation and shall make an investigation of such alleged violation(s) ...." CFF was notified by letter, with a copy of the complaint, on July 12, 1983. After a preliminary investigation, the Commission found it had "reason to believe" a violation may have occurred on October 27, 1983, and began an investigation of those alleged violations on November 29, 1983. The subpoena and order were properly issued in compliance with 2 U.S.C. § 437d(a)(3) (1974), which states, "[t]he Commission has the power ... to require by subpoena ... the attendance and testimony of witnesses and the production of all documentary evidence relating to the execution of its duties...." The FEC exercised this power on December 2, 1983.

The information sought is reasonably relevant to the inquiry involved. The five interrogatories are designed to determine names of parties who were agents of CFF during the 1982 campaign in question and their connection, if any, with the Fusion Energy Foundation, New Solidarity International Press, or the National Anti-Drug Coalition. Since the allegations allege violations involving these organizations, the identification of parties who would have knowledge of the events which may have led to the violation is highly relevant. The documents and materials requested are those which could demonstrate the intent and amount of monies or in-kind contributions these organizations solicited and assigned to CFF, if any. This, too, is highly relevant when the alleged violations are those of misuse of funds and non-reporting of in-kind contributions. The subpoena describes the requested documents sought and states the interrogatories with sufficient specificity to establish relevance. The FEC letter of April 24, 1984, clarifies the questions raised by CFF sufficiently. CFF has not shown that compliance would be overly burdensome. *Federal Trade Commission v. Texaco, Inc.,* 555 F.2d 862 (D.C.Cir.) (en banc), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). Therefore, the subpoena and order in the instant case is well within the broad investigatory procedures allowed by 2 U.S.C. § 437g(a)(1) and (2) (1972) and 2 U.S.C. § 437d(a)(3) (1974) as cited above.

The subpoena and request for production of documents meets these requirements for compliance. Accordingly, this Court hereby grants FEC's motion to enforce compliance with the Federal Election Commission's subpoena of January 5, 1984.